COSCA LAW CORPORATION
CHRIS COSCA (SBN 144546)
1007 7th Street, Suite 210
Sacramento, CA 95814
(916) 440-1010

Attorney for Defendant
VIVIAN WANG

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>VIVIAN WANG,<br><br>    Defendant. | 2:16-CR-00111 KJM<br><br>ORDER EXONERATING BAIL AND RECONVEYING SECURITY DEED |

    The Defendant, VIVIAN WANG, having been sentenced on November 5, 2018, and good cause appearing:

    **IT IS ORDERED THAT**:

    The Security Deed previously posted as security in this matter is hereby exonerated. Said Security Deed is attached hereto as Exhibit A. The Clerk of the Court or designee is directed forthwith to exonerate the bail posted herein and prepare and cause to be filed a Deed of Reconveyance as necessary to fully exonerate bail.

DATED: February 22, 2021.

_____
CHIEF UNITED STATES DISTRICT JUDGE

# EXHIBIT A

Return Recorded Document to:
Hayes H. Gable, III, Esq.
1001 G Street, Suite 100
Sacramento CA  95814-0834

------------------------------------ [Space Above This Line For Recording Data] ------------------------------------

File: Wang-Djj

## SECURITY DEED FOR BOND
Case no. 2:16-cr-0111 KJM

(NO INTANGIBLE TAX DUE
35 month obligation with Balloon)

DEFINITIONS

(A) "**Security Instrument**" means this document, which is dated July 14, 2016

(B) "**Grantor**" is **VIVIAN WANG.**

(C) "**Grantee**" is **United States District Court for the Eastern District of California**, whose address is **501 I Street, Sacramento, CA 95814**.

(C) "**Bond**" means that Appearance Bond obligation for personal recognizance in favor of the **Clerk, United States District Court for the Eastern District of California** and dated the same date herewith and attached hereto as Exhibit "A"

(D) "**Amount**" The Bond states that Grantor shall be obligated to Grantee in the amount **$100,000.00** (U.S) plus any costs or fees in the event that Grantor fails to abide by the terms and obligation of the Bond.

(E) "**Property**" the property that is described below under the heading "Transfer of Rights in the Property", commonly known as **290 Relais Trace, Alpharetta, Georgia   30004**

(F) "**Applicable Law**" means all controlling applicable federal, state and local statutes.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Grantee:  (i) the repayment of the Bond, and all renewals, extensions and modifications of the Bond; and (ii) the performance of Grantor's covenants and agreements under this

*(Page 1 of 5)*

Security Instrument for the Bond. For this purpose, Grantor does hereby grant and convey to Grantee the power of sale, the following described property located in the County of Fulton, State of Georgia

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 1051 OF THE 2ND DISTRICT, 2ND SECTION OF FULTON COUNTY, GEORGIA AND BEING LOT 93, BLOCK B, UNIT TWO OF COVENTRY SUBDIVISION, AS PER PLAT RECORDED IN PLAT BOOK 189, PAGE 93, FULTON COUNTY, GEORGIA RECORDS WHICH PLAT IS INCORPORATED HEREIN AND MADE A PART HEREOF BY REFERENCE.

which currently has the address of: **290 Relais Trace, Alpharetta, Georgia  30004**

TO HAVE AND TO HOLD this property unto Grantee forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

(1) GRANTOR COVENANTS that Grantor is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Grantor warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

(2) GRANTOR shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Grantee requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Grantee requires. What Grantee requires pursuant to the preceding sentences can change during the term of the Bond. The insurance carrier providing the insurance shall be chosen by Grantor subject to Grantee's right to disapprove Grantor's choice, which right shall not be exercised unreasonably. If Grantor fails to maintain any of the coverage described above, Grantee may obtain insurance coverage, at Grantee's option and Grantor's expense. Grantee is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Grantee, but might or might not protect Grantor, Grantor's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Grantor acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Grantor could have obtained. Any amounts disbursed by Grantee under this Section shall become additional Bond amount of Grantor secured by this Security Instrument. Failure to maintain insurance as stated herein, may at the option of Grantee be considered default herein, resulting in Grantee enforcing their full powers under this Security Deed for Bond or otherwise.   All insurance policies required by Grantee and renewals of such policies shall be subject to Grantee's right to disapprove such policies, shall include a standard mortgage clause, and shall name Grantee as an additional loss payee. Grantee shall have the right to hold the policies and renewal certificates. If Grantee requires, Grantor shall promptly give to Grantee all receipts of paid premiums and renewal notices. If Grantor obtains any form of insurance coverage, not otherwise required by Grantee, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Grantee as mortgagee and/or as an additional loss payee.   In the event of loss, Grantor shall give prompt notice to the insurance carrier and Grantee. Grantee may make proof of loss if not made promptly by Grantor. Unless Grantee and Grantor otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Grantee, shall be applied to restoration or repair of the Property, if the restoration or

repair is economically feasible and Grantee's security is not lessened. During such repair and restoration period, Grantee shall have the right to hold such insurance proceeds until Grantee has had an opportunity to inspect such Property to ensure the work has been completed to Grantee's satisfaction, provided that such inspection shall be undertaken promptly. Grantee may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Grantee shall not be required to pay Grantor any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Grantor shall not be paid out of the insurance proceeds and shall be the sole obligation of Grantor. If Grantor abandons the Property, Grantee may file, negotiate and settle any available insurance claim and related matters. If Grantor does not respond within 30 days to a notice from Grantee that the insurance carrier has offered to settle a claim, then Grantee may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Grantee acquires the Property under this instrument or otherwise, Grantor hereby assigns to Grantee (a) Grantor's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Bond or this Security Instrument, and (b) any other of Grantor's rights (other than the right to any refund of unearned premiums paid by Grantor) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Grantee may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Bond or this Security Instrument, whether or not then due.

(3) GRANTOR is not required to occupy the Property.
(4) Grantor shall not destroy damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Grantor is residing in the Property, Grantor shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Grantor shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Grantor shall be responsible for repairing or restoring the Property only if Grantee has released proceeds for such purposes. Grantee may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Grantor is not relieved of Grantor's obligation for the completion of such repair or restoration.

**Protection of Grantee's Interest in the Property and Rights Under this Security Instrument.** If (a) Grantor fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Grantee's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Grantor has abandoned the Property, then Grantee may do and pay for whatever is reasonable or appropriate to protect Grantee's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Grantee's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Grantee may take action under this Section 9, Grantee does not have to do so and is not under any duty or obligation to do so. It is agreed that Grantee incurs no liability for not taking any or all actions authorized under this instrument.

Any amounts disbursed by Grantee under this Section shall become additional debt of Grantor secured by this Security Instrument or at Grantees option may operate as a forfeiture. These amounts shall bear interest at the legal rate from the date of disbursement and shall be payable, with such interest, upon notice from Grantee to Grantor requesting payment.

Grantor shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Grantee's judgment, could result in forfeiture of the Property or other material impairment of Grantee's interest in the Property or rights under this Security Instrument.

**Grantor Not Released; Forbearance By Grantee Not a Waiver**. No action of Grantee shall operate as a waiver of Grantee's rights as contained herein.

**Bond Charges**. Within its judicial powers, Grantee may charge Grantor fees for services performed in connection with Grantor's default, for the purpose of protecting Grantee's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Grantor shall not be construed as a prohibition on the charging of such fee. Grantee may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

**Notices**. All notices given by Grantor or Grantee in connection with this Security Instrument must be in writing. Any notice to Grantor in connection with this Security Instrument shall be deemed to have been given to Grantor when mailed by first class mail or when actually delivered to Grantor's notice address on file with the Grantee or delivered to Grantor's attorney of record. Any notice to Grantee shall be given in the proper form acceptable by the Grantee, whether in the form of a motion or otherwise. Any notice in connection with this Security Instrument shall not be deemed to have been given to Grantee until actually received by Grantee. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**Governing Law; Severability; Rules of Construction**. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Bond conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Bond which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**Transfer of the Property or a Beneficial Interest in Grantor**. As used herein, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred through contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Grantor at a future date to a purchaser. If all or any part of the Property or any Interest in the Property is sold or transferred (or if Grantor is not a natural person and a beneficial interest in Grantor is sold or transferred) without Grantee's prior written consent, Grantee may take any such lawful actions as are requisite for protecting themselves for the purposes of the Bond.

**Foreclosure of Grantee's rights herein,** As required by due process, Grantee shall give notice to Grantor following Grantor's breach of any covenant or agreement in this Security Deed, whereupon Grantee shall not be limited in any manner to take all actions at law or equity to enforce its rights as contained herein. At Grantee's option Grantor may be required to immediately replace this property bond with a cash bond.

Grantor appoints Grantee or Grantee's agents as attorney-in-fact for Grantor to exercise the power of sale. Grantee shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section, including, but not limited to, reasonable attorneys' fees and costs of title evidence. If Grantee invokes the power of sale. Grantee shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Grantee, without further demand on Grantor, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Grantee determines. Grantee or its designee may purchase the Property at any sale. Grantee shall convey to the purchaser indefeasible title to the Property, and Grantor hereby appoints Grantee Grantor's agent and attorney-in-fact to make such conveyance. The recitals in the Grantee's deed shall be prima facie evidence of the truth of the statements made therein. Grantor covenants and agrees that Grantee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section, Grantor, or any person holding possession of the Property through Grantor, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Grantor or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

**GRANTOR ACCEPTS AND AGREES** to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Grantor and recorded with it.

**IN WITNESS WHEREOF,** Grantor has signed and sealed this Security Instrument.

Signed, Sealed and delivered in the presence of:

_____ (Seal)
**Grantor: Vivian Wang**

_____
Unofficial Witness

_____
Notary Public

> DALE J JACKSON
> NOTARY PUBLIC
> FULTON COUNTY, GEORGIA
> MY COMMISSION EXPIRES APRIL 5, 2020

(Page 5 of 5)